—»»e⬤e««—

## THE STATE *vs.* THE TOWN OF HAMPTON.

The legislature have power to permit a turnpike corporation to lay out their road upon an ancient highway.
If an act to that effect be passed by the legislature, and the turnpike corporation accept the grant, and build their road without any material deviations from the bed of the ancient highway, the town, in which the highway was, ceases to be liable for the repairs of any part of it.

This was an indictment for not repairing a few rods of a causeway, alleged to be a public highway across Hampton marsh.

At the trial here, September Term, 1818, the defendants offered in evidence, an act of the legislature, passed 23d of December, 1808.

This act empowered certain persons to become a corporation, with a right to " repair, raise, and widen the cause-" way, now called Hampton causeway"—and " to erect and

* 16 *Mass.* Rep. 16, Harrison *vs.* Bridgeton.

" fix a gate upon said road or causeway, in order to collect the tolls ;" and, among other things, subjected them to indictment " for want of repairs of said causeway or road.

It was admitted by the counsel for the state, that a corporation had been duly organized under the act of the legislature, and a new road built and kept in good repair the whole distance of the causeway. But the new road deviated in a few places from the ancient highway ; and one of those places being near the turnpike gate, the design of the indictment was to have it repaired so that travellers might not be obliged to pass through the gate.

The counsel for the state contended,

1st. That the act of the legislature was void, so far as it undertook to grant any power over the ancient highway to the turnpike corporation.

2d. That if not void, the town were still liable to repair all parts of the ancient highway, not actually occupied by the new road.

On an intimation from the bench unfavorable to the indictment, the cause was by consent withdrawn from the jury, and an agreement made, that the state would enter a *noli prosequi*, or the town be defaulted, according to the opinion of the court after further advisement.

*Sullivan* and *Mason* for the state.

*J. Smith*, for the town.

WOODBURY, J., pronounced judgment in the case.

It is admitted, that the causeway, described in the indictment, was once a public highway in the town of Hampton. It is, also, admitted, that a small part of it, as then travelled, is now in bad repair ; and hence the indictment can be sustained, if that part has not been legally discontinued as a public highway, or the duty to repair it devolved on another corporation.

But the act of the legislature, under which the defendants justify, by empowering a turnpike company to occupy the whole causeway for their corporate purposes, virtually discontinued the whole of it as a public highway of the town—whenever the grant should be accepted and the new road

The State
*vs.*
The town of
Hampton.

constructed.—3 *Mass. Rep.* 407, *Comwth. vs. Westborough.*
————Long since, these events have both happened.

If slight deviations from the old causeway become expedient, it never could have been intended, that the places left as well as the new road should be kept in repair. Because, first, the places deviated from would become useless; and, secondly, the expence of repairs being very burthensome, it was the object of the act of the legislature to substitute a turnpike for the ancient free road, and not to maintain two distinct highways in the same neighborhood across the marsh.

Again, if the duty to repair the places deviated from still exist any where, we are inclined to think it has been devolved upon the turnpike corporation.

That corporation was empowered to use the whole causeway and expressly subjected to indictment " for want of repairs of said causeway or road." This clause might, without any very forced construction, refer to either road. But, independent of that clause, it would be highly unjust for the turnpike corporation to reap the benefits of all the old causeway at their election and not become liable, also, to repair such parts of it, as the public may have intended to keep open for travel. 2 *Lord Ray.* 792 & 804, *Regina vs. Bucknall.*—*Ditto* 856, *Same vs. Watson.*—7 *Mod.* 55, 98.—3 *Maule and Sel.* 526, *the King vs. Harrison.*—13 *East* 220.—14 *East* 317. ————*Qui sensit commodum, sentire debet et onus.*

2. The next enquiry is, whether the legislature possess power to permit a turnpike corporation to occupy for their road a public highway.

(1) 1 N. Hamp. Laws, 386.

By our statute of February 8, 1791, (1) towns alone, where they laid out the highways; and towns, with the consent of the court of sessions, where that court laid them out, are authorized to discontinue, to exchange, and, if owning the soil itself, to sell such highways.

How the causeway in dispute was originally laid out does not appear. If laid out by the legislature, as in some cases was the ancient provincial practice, their right to transfer it could not be questioned. So, if laid out by the town, the town, as it defends this indictment, has doubtless adopted the doings of the legislature. But, whether thus laid out, or by

the court of sessions, or acquired by long use, we think the legislature possesses a control over all public highways paramount to that of towns and of the court of sessions.

The course of reasoning in support of this point is exhausted in the case of the *College vs. Woodward*;(1) and in our opinion, it has not been impaired by the grounds recently taken to justify the reversal of that judgment.*

(1) 1 N. H. Rep. 111.

The easement or use of the causeway for a road is all, which the legislature undertook to grant to the turnpike corporation.

This easement unquestionably belonged to the public; and so far as it was connected with the right to travel in the highway; the right to prosecute for want of repair, or for obstructions, or for nuisances; it did not belong to the people of a particular town, district, or county, but to the people of the whole state. 1 *Lord. Ray.* 486, *Iveson vs. Moore.* —9 *Mass. Rep.* 250.

Towns, in which highways exist, being liable to repair them and to lay out new ones, often at great expense if the old roads be appropriated to other purposes, may well be considered as having in them a qualified corporate interest of some value. 6 *East* 154, *Harrison vs. Parker et. al.*— 1 *N. H. Rep.* 339.

And this interest we should not think it advisable for the legislature to take away, unless by the consent of the towns, or for public purposes. *N. H. Bill of Rights, Art.* 12.

But it has always been understood in this state, and all turnpike grants have been made on the hypothesis, that lands taken for turnpike roads are taken for public purposes.

In this case, there is, also, the consent of the town of Hampton.

The opinions in other states on this subject appear to accord with our conclusions.

In *Wales vs. Stetson,* 2 *Mass. Rep.* 146, Parsons Ch. J. remarks--"We are not prepared to deny a right in the general court to discontinue, by statute, a public highway." The permission by the legislature to erect bridges over navigable

* 4 Wheat. 518.

4

waters, which are in law public highways, is an exercise of power very similar to that exercised in the present case. *2 Mass. Rep.* 492.—10 *Mass. Rep.* 70, *Arundel vs. M'-Cullough.*

The cases of *The Farmer's Turnpike vs. Coventry,* 10 *John.* 389, and of *The People vs. Denslow,* 1 *Caines* 117, expressly recognize a power in the legislature to grant permission to a turnpike corporation to erect their road upon a public highway ; and they further hold, that when the highway has thus been appropriated and obstructed by gates or otherwise, no prosecution lies for it against those acting under the turnpike corporation.

*Let there be entered a noli prosequi.*